*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of IL.

PAUL LETISSIER, MICHELLE HAIGHT, and
RENEE BOOGREN, Guardian of IL, a legally
protected individual,

        Appellees,

v

TERESE SHELLEDY,

        Appellant.

UNPUBLISHED
May 20, 2026
9:18 AM

No. 377144
Oakland Probate Court
LC No. 2021-399681-GA

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Appellant, Terese Shelledy, appeals as of right the probate court's order denying her request to be reinstated as guardian. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

IL has four adult children: Paul LeTissier, Michell Haight, Renee Boogren, and Shelledy. The siblings have a contentious relationship and split into essentially two factions: LeTissier and Shelledy, and Haight and Boogren. After Haight petitioned to appoint a conservator for IL, the siblings ultimately entered into a settlement agreement that made LeTissier conservator and Shelledy guardian. But as time went on, tensions between the siblings impacted Shelledy's actions as guardian until Haight ultimately petitioned to remove her. As bases for her petition, Haight alleged that Shelledy: (1) moved IL to a new care facility without telling Haight or Boogren; (2) imposed severe restrictions on Haight's and Boogren's visits that did not apply to LeTissier, including prohibiting them from taking IL outside of the facility; (3) had repeatedly taken away Haight's access to IL's medical records; and (4) failed to respond to Haight's and Boogren's concerns about IL's medical problems. In addition, Haight had to petition for access to surveillance cameras in IL's room at the care facility. Shelledy, who lives in Wisconsin, had

-1-

installed cameras in IL's home, and then in her room at the facility when she moved, for IL's welfare, but refused to give Haight or Boogren access.

At a hearing, the probate court noted that Shelledy sounded "very controlling[,]" and warned that she was in danger of being removed if she continued her behavior. After Shelledy's actions remained unchanged, the probate court held another hearing. IL was not present, nor was she represented by counsel, and no one was sworn in to give their statements. In light of Shelledy's failure to heed the probate court's warning, it removed her as guardian and appointed Boogren to replace her. LeTissier moved for reconsideration, arguing that IL had not been properly informed and represented in the proceedings concerning Shelledy's removal. The probate court granted the motion and made Boogren a temporary guardian, pending appointment of a full guardian after a proper hearing. Shelledy now appeals.[1]

## II. STANDARDS OF REVIEW

"We review the probate court's dispositional rulings for an abuse of discretion." *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "We review the probate court's findings of fact for clear error." *Id*. "A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Finally, we review questions of statutory interpretation de novo. *Id*. at 404.

## III. ANALYSIS

Shelledy argues that the probate court erred by removing her as IL's guardian. We disagree.

Under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, a person interested in another individual's welfare "may petition for a finding of incapacity and appointment of a guardian" for that individual. MCL 700.5303(1). A probate court "may appoint a guardian if [it] finds by clear and convincing evidence both that the individual for whom a guardian is sought is an incapacitated individual and that the appointment is necessary as a means of providing continuing care and supervision of the incapacitated individual[.]" MCL 700.5306(1). The guardian must be "suitable and willing to serve[.]" MCL 700.5313(2).

A person interested in an individual's welfare may also petition to remove a guardian. MCL 700.5310(2). "EPIC does not set forth a specific standard for removal of a guardian." *In re Guardianship of Redd*, 321 Mich App at 405. "[T]o remove a guardian under MCL 700.5310, the probate court must find that the guardian is no longer suitable or willing to serve." *Id*. at 407. This finding must be supported by a preponderance of the evidence. *Id*. at 410. EPIC does not define

---

[1] LeTissier was also removed as conservator for similar behavior of excluding Haight and Boogren, which he appeals in Docket No. 371470. Thomas Brennan Fraser, who was appointed as successor conservator after LeTissier's removal, also appeals his own, subsequent removal in Docket No. 375802.

the term "suitable," but this Court has held that "a 'suitable' guardian is one who is qualified and able to provide for the ward's care, custody, and control." *Id*. at 408.

The probate court removed Shelledy after she continued to isolate IL from Haight and Boogren and withhold information from them. Shelledy argues that there was no evidence indicating that she was isolating IL from Haight and Boogren. But this claim is belied by the record, which is replete with instances of Shelledy keeping essential information regarding IL from Haight and Boogren and interfering with their ability to visit their mother. As the probate court noted, absent evidence that Haight or Boogren were abusive or harmful to IL, Shelledy, as IL's guardian, should have encouraged IL's interaction with two of her four children. But Shelledy's behavior isolated IL from her other daughters, demonstrating that Shelledy was either unable or unwilling to prioritize IL's wellbeing and care over her hostility toward her sisters. Thus, Shelledy's behavior provided a sufficient basis for her removal by a preponderance of the evidence.[2]

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense

---

[2] Shelledy also raises unpreserved arguments challenging the probate court's failure to swear the siblings in at the relevant hearings, which deprived her of the opportunity to cross-examine them. She also challenges the probate court's alleged reliance on ex parte communications. Generally, Michigan follows the "raise or waive" rule of appellate review in civil cases. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). But a recent published opinion has reasoned that, for guardianship cases, appellate review of unpreserved errors should be for plain error affecting substantial rights. *In re Guardianship of AMMB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915); slip op at 3. This Court reasoned that guardianship cases involve parties litigating someone else's rights, which rendered them more akin to termination-of-parental-rights cases or custody cases, in which we have imposed the plain error standard of review despite being civil in nature. *Id*. at ___; slip op at 2-3. Because *AMMB* is published, binding authority, we will review Shelledy's claims for plain error affecting her substantial rights. *Id*. at ___; slip op at 3. An error affects substantial rights if it is outcome-determinative. *Kilian v TCF Nat'l Bank*, 343 Mich App 621, 640; 997 NW2d 745 (2022). Shelledy's behavior, which served as the basis for her removal, was presented to the probate court beyond any unsworn testimony or alleged ex parte communications by Haight's petition for Shelledy's removal and Shelledy's own response to that petition. Thus, even if we were to find merit in Shelledy's allegations of error, any such error would not be outcome-determinative.